O

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **BIPIN BHAKTA,**<br>      **Plaintiff,**<br><br>vs.<br><br>**HARTFORD LIFE AND ANNUITY INSURANCE COMPANY,**<br>      **Defendant.** | Case No.: SACV 14-0351-DOC (ANx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [38]** |

Before the Court is Defendant's Motion for Summary Judgment, or, in the alternative, Partial Summary Judgment (Dkt. 38). The Court held a hearing on this matter on March 2, 2015. Having considered the parties' respective briefing and oral arguments, the Court GRANTS Defendant's motion.

**I.     BACKGROUND**

Dharmista Bhakta ("Mrs. Bhakta") applied for and purchased a term life insurance policy from the Defendant Hartford Life and Annuity Insurance Company ("Hartford" or "Defendant"), issued on January 10, 2013. On February 25, 2013, less than two months after

the policy was issued, Mrs. Bhakta died at forty-one years old. Hartford, after investigating Mrs. Bhakta's death and learning of her history of alcohol abuse, rescinded the insurance policy on the basis of material misrepresentation in Mrs. Bhakta's policy application. Mrs. Bhakta's husband, Mr. Bipin Bhakta ("Mr. Bhakta"), the beneficiary under the policy, brought this suit for breach of contract to collect the money allegedly owed under the Policy.

### A. Insurance Application

Mrs. Bhakta applied to Hartford for a term life insurance policy through a broker, Paul Talley ("Mr. Talley") on December 12. SUF 1. As part of the application process, a telephonic interview was conducted with Mrs. Bhakta about her medical history. SUF 3. During the interview, Mrs. Bhakta revealed that she had been treated for mild depression in April 2011, and had been prescribed Ambien for a few months thereafter. Podgurski Decl. Ex. H, Bhakta Application Tele-Interview ("Interview") at 13:13-17:17. In the form, the interviewer noted Mrs. Bhakta currently suffered from "mild" depression, and noted in the comments that Mrs. Bhakta was currently suffering from no symptoms and was receiving no treatment. *Id.*, Tully Decl. Ex. G at Hartford_000092-94. Mrs. Bhakta also indicated that she had never been advised about, counseled or treated for the excessive use of alcoholic beverages. *Id.* at 92. She also responded no to the question of whether she had ever been treated for, or had treatment recommended for, ulcer, hernia, colitis, intestinal bleeding, diverticulitis, ulcerative colitis, Crohn's disease, hepatitis, or any other disease, condition, or disorder of the stomach, intestines, esophagus, gallbladder, liver, or pancreas. *Id.* Mrs. Bhakta also stated that she consumed "one glass [of alcohol] every two weeks" and had a drink "weekly." Interview at 21:7-24. To complete the application, Mrs. Bhakta went through a paramedical exam, which included taking her height, weight, pulse and blood pressure, as well as collecting blood and urine samples for laboratory analysis. SUF 13. Most of her lab results were in normal range. SUF 14. However, she had an ALT level of 53, where the high normal was 45, and an HDL level of 83, where a high normal was 80. The abnormal results did not disqualify Mrs. Bhakta from the "Preferred Best" classification. SUF 15. As part of the application, Mrs. Bhakta signed a release for her medical records, but Hartford did not order or review her records prior to

issuing the policy. On January 17, 2013, she confirmed the representations made in her application when she accepted the "Preferred Best" Policy. SUF 25-27.

### B. Underwriting Guidelines

Hartford uses underwriting guidelines for assessing insurance applicants for mood disorders and alcohol abuse. The Mood Disorder guidelines instruct that a:

> thorough assessment is suggested before allowing preferred consideration which includes no treatment or medication for mood symptoms in the last 5 years. … When evaluating a mood disorder, the underwriter is to consider 'unfavorable' features of the applicant's depression risk such as marital or family disharmony, alcohol abuse, short duration since diagnosis, history of lost work, and behavior disturbance ….

Podgurski Dec., Ex. G, Mood Disorders Pamphlet, Hartford_894-902.

The Alcohol Abuse underwriting guidelines state that "alcoholics almost always deny the extent of their drinking problem," and that "underwriter should investigate the possibility of alcohol abuse and develop information about the applicant's drinking habits" Podgurski Decl., Ex. G, Hartford_336, 344. The guidelines include 40 factors the underwriter should consider in investigating the possibility of alcohol abuse. *Id.* at 337-338.

### C. Investigation

After Mrs. Bhakta passed away on February 25, 2013, Hartford conducted an investigation into her medical history. They uncovered material indicating that Mrs. Bhakta's representations on her application were false. First, Hartford learned Mrs. Bhakta has been diagnosed with and treated for ulcerative colitis since 2003; second, that she had been diagnosed with alcohol dependence and liver disease and had apparently been counseled for these conditions since April 2010; third, that she had been referred to a hematologist to treat her liver disease in July 2010; and finally, that she had been seen by her PCP for a "follow up" appointment regarding liver disease on January 7, 2012, only ten days before signing the

Policy. Memo. (Dkt 40) at 13, SUF 38-40.[1] Hartford rescinded the policy on the basis of material misrepresentations contained in the application.

Plaintiff then sued for breach of contract and breach of the implied covenant of good faith and fair dealing. Compl. (Dkt. 1-1). Hartford now moves for summary judgment as to all claims, arguing that Mrs. Bhakta's misrepresentations regarding her history with alcohol dependence, liver disease, and colitis were all material as a matter of law. Memo. at 14. As a result, Hartford claims that it validly rescinded the insurance policy.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde &*

---

[11] Plaintiff disputes Hartford's characterization of the medical records, namely, that the referral in the medical record did not specify any reasoning for the referral to a hematologist. The Plaintiff's disputes are noted.

*Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**III.   ANALYSIS**

**A.  Breach of Contract**

The Court will consider whether (1) there was a material misrepresentation in Mrs. Bhakta's application, and (2) if so, whether Hartford waived its right to rescind the policy as a result of its failure to adequately underwrite the Policy.

**1.   Misrepresentation**

Hartford maintains that it validly rescinded the Policy due to misrepresentations on Mrs. Bhakta's application with regards to her history of alcohol abuse and liver disease. Mot. at 12.

Under California Law, an insured's concealment of misrepresentation of information material to the insurer is grounds for rescission. Cal. Ins. Code §§ 331, 332, 359; *Torbensen v. Family Life Ins. Co.*, 163 Cal. App. 2d 401, 405 (1958) ("The question is whether the misrepresentation is such that if the insurer had known the true facts it would have made further inquiries or would have been influenced materially in its decision in accepting the risk."). The Policy itself also provides that Hartford may rescind the Policy and deny benefits if any answers were incorrect or untrue.

Plaintiff argues that Hartford has not demonstrated that there was an actual misstatement on the application as the term "excessive use" in the question "have you ever been treated for excessive use of alcohol or drugs?" is ambiguous. Opp'n at 18. Therefore, he claims that Hartford has not laid a foundation showing that this statement was actually a misrepresentation. *Id.* This argument is unpersuasive. Mrs. Bhakta's medical records reveal that her physician repeatedly diagnosed her for "alcohol dependence" along with the notation "drink alcohol" in

1 her past medical history. Tully Decl. Ex. G at 197-216. The diagnosis of alcohol abuse or
2 dependence is sufficient evidence to establish that Mrs. Bhakta was advised, counseled or
3 treated for the excessive use of alcoholic beverages. Although the medical records do no state,
4 in the exact words, that the physician "counseled Mrs. Bhakta about excessive use of alcohol,"
5 the repeated references to alcohol abuse in the medical records establish beyond reasonable
6 dispute that she had been counselled by her physician regarding excessive drinking. In addition,
7 the question is not ambiguous or subject to multiple reasonable interpretations. Her "no"
8 response was clearly false or knowingly misleading.

9 Moreover, the Plaintiff does not even address the other misrepresentations in the
10 application that Hartford identifies, specifically, Mrs. Bhakta's misrepresentation of her history
11 of liver disease. This independent statement was materially false, giving Hartford the right to
12 rescind the policy.

13 Hartford has established that Mrs. Bhakta made material misrepresentations in her life
14 insurance policy application, establishing valid grounds for rescission of the Policy.

### 2. Waiver

16 Having concluded that Mrs. Bhakta made material misrepresentations in her application,
17 the Court now assesses whether Hartford waived its right to rescind the policy through
18 inadequately underwriting the policy before issuing it. Opp'n at 10. Plaintiff argues that
19 Hartford was in possession of information that confirmed Mrs. Bhakta's alcohol abuse when it
20 issued the policy, giving rise to a duty to investigate her application further. Opp'n at 12.

21 In California, if an applicant omits material information in response to direct questions,
22 "[o]rdinarily, this would entitle the company to avoid the policy." *DiPasqua v. California v.*
23 *States Life Ins. Co.*, 106 Cal. App. 2d 281, 284 (1951); *see also*, *Unionamerica Ins. Co. v. Fort*
24 *Miller Grp., Inc.*, 2009 WL 688873, at *7 (N.D. Cal. Mar. 16, 2009) *aff'd sub nom.*
25 *Unionamerica Ins. Co. v. The Fort Miller Grp., Inc.*, 379 F. App'x 598 (9th Cir. 2010) (simply
26 because the insurer had the "means of ascertaining" the truth via an internet search did not
27 relieve the applicant of its duty of disclosure).

A duty to investigate further arises, however, where there are obvious indications in the information provided that the facts may not be as presented. *See* Cal. Ins. Code § 336 (an insurer's right to material facts may only be waived by "neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated."); *Old Line Life Ins. Co. v. Super. Ct.*, 229 Cal. App. 3d 1600, 1606 (1991) (the insurer's right to disclosure of material facts may be waived only "by its own failure to follow up obvious leads"). Thus, if there are obvious leads in an insurance application that the information provided may be false, a duty falls upon the insurer to investigate the responses further. Minor or immaterial discrepancies on an insurance application, however, do not imply other, material omissions in the application that would trigger a duty to investigate. *W. Coast Life Ins. Co. v. Ward*, 132 Cal. App. 4th 181, 189, 193 (2005) (discovery of an immaterial omission in a policy application "did not imply the existence of distinct material omissions" that would have put the insurer on notice to investigate further); *Old Line*, 229 Cal. App. 3d at 1607.

Plaintiff argues that Hartford had access to Mrs. Bhakta's medical records and had conducted a blood test which had abnormal results, and therefore Defendant had essentially begun an investigation and had an obligation to order and review those records as certain responses on Mrs. Bhakta's application and the blood test indicated alcohol problems, despite her negative responses.

Plaintiff relies heavily on *Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal. 2d 659 (1969). *Barerra* concerns an auto insurance policy. An applicant for an insurance policy, Alves, did not read the application for insurance, and the insurance agent filled out the application on his behalf. In response to one of the questions, the agent failed to note that the applicant's registration had been revoked, despite seeing Alves's license which bore a "Probation" stamp on it. *Id.* at 665. A DMV report was ordered, but was not reviewed. The report indicated a suspension and two probation orders. *Id.*  The applicant was issued the policy, and over a year later was involved in an accident. Armed with this information, the court concluded that State Farm "in failing to investigate Alves's insurability and to obtain a DMV report, pursued a policy of saving minor costs on its part at the expense and sacrifice of the interests of its insured

1 and those of the general public who were the potential victims of the insured's negligence," and
2 it therefore could not avoid the policy. *Barrera*, 71 Cal. 2d at 667; s*ee also Blumen v.*
3 *Clayburgh*, 10 Cal. App. 2d 63, 65 (1935) ("where a party has knowledge of facts of a character
4 which would reasonably put him upon inquiry, and such inquiry, if pursued, would have led to
5 a discovery of the fraud or other ground for rescission, he will be charged with having
6 discovered the fraud or other ground as of the time he should have discovered it, that is, as of
7 the time when he would have discovered it if he had with reasonable diligence pursued the
8 inquiry when he should have done so").

9 *Barrera* is clearly distinguishable. The issue is whether the material in Hartford's
10 possession was sufficient to put it on inquiry notice of Mrs. Bhakta's false representations.
11 Plaintiff points to six factors "associated with heavy drinking" that were present on Mrs.
12 Bhakta's application allegedly giving rise to inquiry: Marital instability; frequent job change or
13 poor employment (Mrs. Bhakta was a homemaker); history of depression; elevated ALT and
14 HDL; and frequent bronchial infections. Opp'n at 15.

15 First, it is unclear where Mrs. Bhakta provided any indication of marital instability, as
16 Plaintiff has not pointed to any information in the application that would signify as much. In
17 addition, Plaintiff concedes the fact that, because Mrs. Bhakta was a homemaker, there was no
18 indication of frequent job change or poor employment – nor that she was having trouble at
19 home. Opp'n at 15. Plaintiff has also admitted that Mrs. Bhakta did not disclose frequent
20 bronchial infections – she simply stated a "severe cough" was the reason for her last medical
21 visit. She in fact denied experiencing "chronic bronchitis" and other respiratory diseases.
22 Hartford has explained that ALT and HDL levels only slightly above normal, such as Mrs.
23 Bhakta's, were a poor indicator of alcohol abuse. Reply at 8. Even weighed in the light most
24 favorable to Plaintiff, each of these factors amount to an extremely minor, if any, indicator that
25 there may have been falsities in the insurance application.

26 Plaintiff emphasizes that generally, persons with any recent history of depression do not
27 qualify for the "preferred best" life insurance policy under Hartford's underwriting guidelines.
28 Opp'n at 16. Even if that were true, the fact that Mrs. Bhakta suffered from mild depression

several years in the past in no way indicated the presence of material falsehoods in the application. Plaintiff argues that her history of depression was an undesirable "factor" that contributed to a profile of heavy drinking or depression. Opp'n at 17. However, as Hartford points out, this factor was one of many factors underwriters should consider in assessing whether an applicant may be abusing alcohol. Reply at 4, Hartford_000337-38. Mrs. Bhakta's past experience of depression was not, even in combination with these other factors, an "obvious indication" that she had misrepresented her alcohol abuse and liver disease.

While in hindsight these "indicators" may provide some hint Mrs. Bhakta was not being forthcoming in her application, no reasonable jury could find that the information gave rise to a duty to investigate Mrs. Bhakta's responses further. The information was not of such an obvious and blatant nature that the burden should be shifted to Hartford to uncover the falsehoods present in the insurance application. Unlike *Barrera*, where the insurance agent filled out the application itself and could plainly see the insured had a negative driving history, there was no information in Mrs. Bhakta's application making her misrepresentations obvious.

As a matter of law, Hartford did not waive its right to rescind the insurance policy based on Mrs. Bhakta's material misrepresentation. Its motion is therefore GRANTED as to the breach of contract claim.

### B. Bad Faith

Because Hartford's denial of coverage was reasonable, there is no genuine dispute regarding Plaintiff's bad-faith claim. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). The Motion is GRANTED on this basis.

### IV. DISPOSITION

For the reasons set forth above, Hartford's Motion is GRANTED in full. Summary judgment is entered in favor of the Defendant as to all claims.

DATED: March 3, 2015

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE